414 F.2d 403
 Eleanor G. MORTON, Robert L. Gwinn, Elizabeth B. Gwinn, David M. Gwinn, John C. Gwinn, Richard H. Gwinn and E. Clyde Heath, Guardian for Nancy V. Gwinn and Martha E. Gwinn, minors, Partners trading as Pennbrook Milk Company, Appellants,
v.
NATIONAL DAIRY PRODUCTS CORPORATION.
 No. 17489.
 United States Court of Appeals Third Circuit.
 Argued March 6, 1969.
 Decided July 9, 1969.
 Rehearing Denied August 8, 1969.
 
 William S. Rawls, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa. (C. Oliver Burt, III, Philadelphia, Pa., on the brief), for appellants.
 William H. Lowery, Dechert, Price & Rhoads, Philadelphia, Pa. (Owen B. Rhoads, George Reath, Jr., Philadelphia, Pa., on the brief), for appellee.
 Before KALODNER, FREEDMAN and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 KALODNER, Circuit Judge:
 
 
 1
 This appeal is from the judgment of the District Court in favor of the National Dairy Products Corporation ("Sealtest") in the action brought by the plaintiffs trading as Pennbrook Milk Company ("Pennbrook") alleging violation of § 2 of the Clayton Act as amended by § 2(a) of the Robinson-Patman Act, c. 592, 49 Stat. 1526, 15 U.S.C.A. § 13 (a).[1]
 
 
 2
 The critical issues presented are whether fact-findings made by the District Court, to which trial was had, are "clearly erroneous" and whether the District Court erred in construing applicable legal standards under the antitrust laws.
 
 
 3
 Plaintiffs' Complaint, in broad outline, alleges that Pennbrook and Sealtest are competitively engaged in selling milk to retail food stores and supermarkets in the Greater Philadelphia, Pennsylvania area; Penn Fruit Company, which operates a chain of supermarkets in the area, is the principal customer of both Pennbrook and Sealtest; Sealtest engaged in price discrimination by making sales of milk to Penn Fruit at its New Jersey and Delaware facilities at prices lower than those charged by Sealtest to its other customers in the Philadelphia area for the purpose of eliminating Pennbrook as a competitor.
 
 
 4
 The critical testimony adduced at the 15-day trial may be summarized as follows:
 
 
 5
 Pennbrook is a family-owned milk processing and sales concern with a single plant in Philadelphia. The defendant is a major national dairy corporation and it owns and operates the division of Sealtest Foods which conducts a milk processing and sales business in southeastern Pennsylvania, southern New Jersey and Delaware, with plants and facilities at each location. At the time relevant here, Penn Fruit Company operated forty-five stores and supermarkets in Pennsylvania. Prior to November, 1961, Pennbrook supplied all of the milk purchased by eighteen of the Penn Fruit stores and Sealtest supplied the remaining twenty-seven stores; Penn Fruit was at this time the largest customer of both Pennbrook and Sealtest in the Philadelphia area. The Pennsylvania Milk Control Commission ("PMCC") at all times relevant here, inter alia, fixed minimum prices at which Pennbrook and Sealtest and other dairies could sell milk to retail outlets in Pennsylvania. The New Jersey Office of Milk Industry ("OMI") regulated milk prices in New Jersey; Delaware had no milk control law.
 
 
 6
 Prior to August, 1961, all Sealtest sales to Penn Fruit stores in Pennsylvania were made by delivery in Sealtest trucks from Sealtest plants located in Pennsylvania. These sales were subject to the PMCC price minimum (at that time) of twenty-three to twenty-five cents per quart. On August 15, 1961, pursuant to an agreement executed in April of 1961, Sealtest began to make these sales at its Camden, New Jersey plant, "Platform Delivery", with Penn Fruit taking delivery of the milk in Penn Fruit's own trucks and handling its shipment from Camden to the individual Penn Fruit stores in Pennsylvania. Under this new system, Penn Fruit personnel also took over the performance of certain "in-store services", such as filling of refrigerator cases, rotation of inventory, etc., which had previously been performed by Sealtest drivers. The "Platform Delivery" sales were made by Sealtest to Penn Fruit at a net price of eighteen cents per quart, a price allowed by OMI for sales to "distributors."[2]
 
 
 7
 During the period from October, 1963, to August, 1966, Sealtest made the bulk of its platform sales to Penn Fruit at its storage facilities in Claymont, Delaware, with the milk apparently being hauled there by Sealtest from its Camden plant. This method of operation was necessitated by a New Jersey Supreme Court decision[3] holding that wholesale customers such as Sealtest were not entitled to distributor prices in New Jersey. In 1966 OMI granted Penn Fruit a milk dealer's license and the locus of delivery shifted back to Camden under a new lease-of-facilities arrangement.
 
 
 8
 Since Pennbrook had no facilities outside of Pennsylvania, it could not pursue the procedure employed by Sealtest for avoiding the PMCC minimum-price regulations. Consequently, on November 28, 1961, Penn Fruit began purchasing from Sealtest, by "Platform Delivery-Camden", the milk needed for the eighteen stores previously served by Pennbrook. By October of 1962, Penn Fruit had ceased all purchases from Pennbrook, except for certain purchases of "extra-rich" milk.
 
 
 9
 Pennbrook's sales fell off significantly as a result; this is the injury which Pennbrook claims as an "injury to competition" in violation of the Robinson-Patman Act.
 
 
 10
 Sealtest's answer to that claim is three-fold: (1) the lower "platform" prices charged to Penn Fruit were "cost justified"; (2) they were established "in good faith to meet an equally low price of a competitor" (Pennbrook); and (3) "price differences mandated by different state regulations do not violate the Robinson-Patman Act."
 
 
 11
 The District Court, in its Opinion,[4] found that Pennbrook had made out a "prima facie case" but that Sealtest had "successfully" demonstrated the "adequate defense" of "cost justification",[5] and further concluded that "The prices charged by Sealtest and paid by Penn Fruit were established in good faith to meet competition within the scope of the Robinson-Patman Act, including the lower price of Pennbrook."[6]
 
 
 12
 On the score of "cost justification" the District Court made this fact-finding:
 
 
 13
 "Sealtest's prices to Penn Fruit were cost justified, and made only due allowance for differences in the cost of manufacture, sale, and delivery." Finding of Fact No. 125.[7]
 
 
 14
 It may be noted parenthetically that the District Court rejected Sealtest's third asserted defense that its pricing practice was due to the minimum price systems mandated by state regulations and accordingly were not in violation of the antitrust laws.
 
 
 15
 On review of the testimony we are unable to say that the District Court's fact-finding that "Sealtest's prices to Penn Fruit were cost justified" was "clearly erroneous". Further, we cannot subscribe to Pennbrook's contention on this appeal that the District Court erred in construing applicable legal standards in making the stated fact-finding.
 
 
 16
 The Robinson-Patman Act specifically makes permissible price "differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are * * * sold or delivered."
 
 
 17
 The District Court made detailed fact-findings, amply supported by the testimony, on the score of its ultimate fact-finding that Sealtest's prices to Penn Fruit were "cost justified".
 
 
 18
 It specifically found (Fact-Finding No. 108) that Sealtest's savings "expressed as a percentage of the sales dollar or selling price" was 21.8% — broken down as follows: delivery expense 14.4%, selling expense 5%, and general and administrative expense 2.4%, and, (Finding of Fact No. 109) "In addition, there was a lower material cost in New Jersey in 1961 which increased the savings another 4.4%", making a total "difference in costs, expressed as a percentage of the selling price" of 26.2% (Finding of Fact No. 112). It further found that "All costs which were attributable to serving Penn Fruit at the platform in Camden were included in the computation." (Finding of Fact No. 110). In Finding of Fact No. 113, the District Court found that "The difference in minimum selling price between Pennsylvania and New Jersey was 21.8%."
 
 
 19
 On this appeal, Pennbrook contends that "The cost studies presented at trial by Sealtest were invalid because, in computing its average cost of selling milk to its wholesale milk customers in the Delaware Valley, it improperly lumped both large and small retail store customers, and various institutional customers, including restaurants, hospitals, schools and vending machines." It cites in support of its contention, United States v. Borden Company, et al., 370 U.S. 460, 82 S.Ct. 1309, 8 L.Ed.2d 627 (1962), and American Motors Corporation v. Federal Trade Commission, 384 F.2d 247 (6 Cir. 1967), cert. den. 390 U.S. 1012, 88 S.Ct. 1260, 20 L.Ed.2d 164 (1968). These cases, however, afford no nourishment to Pennbrook's stated contention.
 
 
 20
 As the District Court stated in its Opinion at page 763, of 287 F.Supp:
 
 
 21
 "Sealtest's cost justification study was based upon a comparison of its costs to serve Penn Fruit at Camden and Clayton and its costs incurred in serving its Pennsylvania retail store customers as a group. * * * Such a cost study met the requirements set forth in United States v. Borden Co. * * * as the class of Sealtest's Pennsylvania retail customers as a group reflects the `uniformity and selfsameness' of the defendant's cost of doing business with customers in that group."
 
 
 22
 The testimony established that the sales and distribution methods pursued by both Sealtest and Pennbrook (except as to platform sales) were uniform.
 
 
 23
 What has been said makes it unnecessary for us to reach the second ground assigned by the District Court for its holding in favor of Sealtest, viz. that "The prices charged by Sealtest and paid by Penn Fruit were established in good faith to meet competition. * * *"
 
 
 24
 For the reasons stated, the Order of the District Court entering Judgment in favor of the defendant will be affirmed.*
 
 
 
 Notes:
 
 
 [1]
 § 2(a) provides in pertinent part:
 "(a) * * * it shall be unlawful for any person engaged in commerce * * *, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, * * * where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: Provided, That nothing herein contained shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered * * *."
 
 
 [2]
 Pennsylvania did not at this time have any similar provision for platform pricing to sub-dealers
 
 
 [3]
 National Dairy Products Corp. v. Hoffman, 40 N.J. 475, 193 A.2d 125, decided July 1, 1963
 
 
 [4]
 The Opinion of the District Court is reported at 287 F.Supp. 753 (E.D.Pa. 1968)
 
 
 [5]
 287 F.Supp. 764
 
 
 [6]
 Conclusion of Law No. 10, 287 F.Supp. 765-766
 
 
 [7]
 287 F.Supp. 761
 
 
 *
 Judge Freedman heard the argument in this case but did not participate in the ultimate decision